IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01298-KLM

KIMBERLY K. HAWKS, an individual,

     Plaintiff,

v.

BALLANTINE COMMUNICATION, INC., a Colorado corporation doing business as Ballantine Publishing,

     Defendant.
_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Dismiss** [#6].[1]  Plaintiff filed a Response [#8] in opposition to the Motion [#6],[2] and Defendant filed a Reply [#11]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises.[3]  For the reasons set forth below, the Motion [#6] is **GRANTED in part and DENIED in part**.

## I.  Summary of the Case

_____

[1]  "[#6]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

[2]  In a footnote in the Response, Plaintiff states that Defendant's Motion, filed on August 11, 2015, was untimely. [#8] at 4 n.1.  The deadline to file the Motion was August 4, 2015, because service of the Summons and Complaint was completed on July 14, 2015. [#8] at 4 n.1.  However, "Plaintiff's counsel . . . agreed via email to [Defendant's] request for an extension of time on August 4, 2015." *Id.*  Although Defendant failed to comply with D.C.COLO.LCivR 6.1 by filing a motion or stipulation for extension of time on the electronic docket, the Court will not deny the Motion on this technicality given Plaintiff's prior agreement to the extension of time.

[3]  The case has been referred to the undersigned for all purposes [#13] pursuant to the Court's Pilot Program and 28 U.S.C. § 636(c), upon consent of the parties [#12].

Defendant is a publishing company incorporated in the State of Colorado. *Compl.* [#1] ¶ 2. Plaintiff is a former employee of Defendant who worked there for approximately two years before being laid off in March 2013. *Id.* ¶¶ 6, 10. In connection with the circumstances underlying her termination, Plaintiff asserts three claims: (1) violation of the Age Discrimination in Employment Act ("ADEA"), (2) violation of the Colorado Anti-Discrimination Act ("CADA"), and (3) a state law claim of intentional interference with prospective economic relations. *Id.* ¶¶ 39-51.

Plaintiff was born in 1962. *Id.* ¶ 5. On February 24, 2011, Plaintiff was hired by Defendant as a Newsroom Assistant for the newspaper *Cortez Journal*. *Id.* ¶ 6. Plaintiff asserts that she had no disciplinary or other problems while employed by Defendant and that she received positive performance evaluations from two separate supervisory Managing Editors, two merit-based raises, and a promotion. *Id.* ¶¶ 7-8.

In March 2013, Plaintiff was recovering from an unspecified major surgery and was absent from work on pre-approved leave pursuant to the Family Medical Leave Act ("FMLA"). *Id.* ¶ 11. On March 14, Defendant announced that it was initiating a reduction in force and that eleven employees would be laid off effective March 29, 2013. *Id.* ¶ 9-10. Despite being on FMLA leave, Plaintiff was notified by Karen Hornbaker, at the time serving in Human Resources at the *Cortez Journal*, that Plaintiff needed to come to work on March 15 for a mandatory staff meeting. *Id.* ¶¶ 11-12. Plaintiff states that she was physically unable to attend the staff meeting, so Defendant forced her to participate in a conference call with General Manager Ken Amundson, HR Director Danielle Kirkpatrick, Publisher Suzy Meyer, and then-CEO/Owner Richard Ballantine. *Id.* ¶ 13. Plaintiff was informed during the call that her position was eliminated because Defendant was undergoing financial difficulties and needed to reduce staffing. *Id.* ¶ 14. Plaintiff was also informed

during the call that the elimination of her position was not performance-related. *Id.* ¶ 15.

That same day, Plaintiff received a package of materials via overnight mail, requesting a release of claims against the company in exchange for two weeks of severance pay and one month of employer-funded COBRA benefits. *Id.* ¶ 16. The packet of materials also included a two-page document titled "Criteria for Reduction in Force," which included a list of job titles and ages of employees who were and were not selected for elimination. *Id.* ¶¶ 18, 20. Plaintiff asserts that at the time she received this packet of materials, she had no reason to disbelieve Defendant's statements that the elimination of her position was due solely to the financial difficulties facing the company. *Id.* ¶ 19. At the time Plaintiff received the materials, due to her recovery from surgery, she was not able to stand without assistance or wear anything except pajamas, and was on multiple prescribed pain medications and muscle relaxants. *Id.* ¶ 17.

Approximately six days later, on March 21, Defendant's HR Director drove to Plaintiff's house to obtain a signed copy of the waiver and severance agreement. *Id.* ¶ 24. Because of Plaintiff's physical condition and the medications she was taking, Plaintiff was unable to stand without assistance when the HR Director arrived. *Id.* ¶ 26. Plaintiff asserts that having the HR Director come to her house constituted heavy pressure by Defendant to sign the waiver and agreement. *Id.* ¶ 23. Plaintiff asserts that she was not afforded proper time to review the agreement or to have it reviewed by an attorney. *Id.* ¶ 25. Regardless, she signed the agreement. *Id.* ¶ 22. She was told she would receive a signed copy but was never provided with one. *Id.* ¶ 27.

On March 29, 2013, following the official last day of work for employees of Defendant who were subject to the reduction in force, Defendant began including classified

ads in the "Help Wanted" section of the *Durango Herald* newspaper for several of the eliminated positions, including Plaintiff's. *Id.* ¶ 28. In June 2013, Plaintiff learned that her position had not been eliminated after all, and that her duties had been assumed by a twenty-five-year-old former co-worker, Amanda Maestas ("Maestas"). *Id.* ¶ 29. On June 17, 2013, the "Staff Listing" section of the *Cortez Journal* website listed Ms. Maestas as having Plaintiff's former job title, i.e., Newsroom Assistant. *Id.* ¶ 30. On January 6, 2014, the *Cortez Journal* ran a story about the changes at the newspaper and listed Ms. Maestas as an "Assistant" with identical job responsibilities to those assigned to Plaintiff when she was employed there. *Id.* ¶ 31. Ms. Maestas was also described as the Newsroom Assistant of the *Cortez Journal* on the newspaper's official twitter page as late as January 30, 2014. *Id.* ¶ 32. On information and belief, Defendant's staffing levels have increased significantly since the March 2013 reduction in force. *Id.* ¶ 33. Based on this later-acquired knowledge, Plaintiff asserts that her signing of the release of claims was neither knowing nor voluntary. *Id.* ¶ 34.

## II. Standard of Review

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [her] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d

1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

### III. Analysis

**A.     ADEA and CADA**

For purposes of this Motion [#6], the parties do not appear to dispute that, if the

release of claims signed by Plaintiff is valid,[4] Plaintiff may not assert her ADEA and CADA claims.   However, Plaintiff argues that the release of claims is one of Defendant's affirmative defenses, and therefore she does not need to provide allegations sufficient to withstand dismissal on this basis.   The Court disagrees.   In *Snyder v. Embarq Mgmt. Co.*, No. 11-2271-JAR, 2011 WL 4452526, at *3 (D. Kan. Sept. 26, 2011), the court held:

> Plaintiff next suggests that he is not required to plead that the waiver is invalid because it is an affirmative defense for which defendant bears the burden of proof.   The Court agrees with defendant, however, that the question on a motion to dismiss is whether the complaint states a claim for relief, not whether plaintiff is able to muster evidentiary support for his claim. The Court is required to determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."   And if an affirmative defense "appears plainly on the face of the complaint itself, the motion may be disposed of under this rule."   Plaintiff concedes in the Complaint that he signed a release of his ADEA claims, therefore, the Court finds that it is appropriate to consider this affirmative defense on a motion to dismiss.

(footnotes omitted).   The same circumstances exist here.

Plaintiff argues that Defendant's "supposed basis for her termination was false and fraudulent, that she signed the release she was provided under duress, and that, under the totality of the circumstances she neither knowingly nor voluntarily waived her rights under the ADEA, and the release is [therefore] void . . . ."   *Response* [#8] at 7-9 (citing and summarizing *Compl.* [#1] ¶¶ 11-34); *see also Compl.* [#1] ¶ 34 ("The purported waiver signed by Plaintiff was neither knowing nor voluntary, and is therefore void . . . .").   The Court begins with Plaintiff's assertion that she was fraudulently induced into signing the release of claims.

Defendant argues that Plaintiff failed to comply with the particularity requirements

---

[4]   To resolve the Motion, the Court need not examine the release of claims referenced by Plaintiff in the Complaint and attached by Defendant to the Motion. *See* [#6-1]. The Court therefore does not reach the issue of whether it may do so without converting the Motion into one for summary judgment. *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).

of Fed. R. Civ. P. 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "[A] complaint alleging fraud [must] . . . 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)). "The purpose of Rule 9(b) is to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (internal quotations omitted) (citations omitted).

Under Colorado law, fraud consists of the following five elements: (1) "the defendant made a false representation of a material fact;" (2) "the party making the representation knew it was false;" (3) "the party to whom the representation was made did not know of the falsity;" (4) "the representation was made with the intent that it be acted upon;" and, (5) "the representation resulted in damages." *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1229-30 (10th Cir. 1999). Here, Plaintiff has alleged that: (1) Defendant represented during a meeting held on March 15, 2013, that Plaintiff and her position were being eliminated because Defendant "was undergoing financial difficulties and needed to reduce staffing;" (2) on March 29, 2013, the day after the last official day of work for the employees who were released due to the asserted staff reduction, "Defendant began including classified ads in the 'Help Wanted' section of the *Durango Herald* newspaper for several of the eliminated positions, including Plaintiff's;" (3) Plaintiff "had no reason to disbelieve Defendant's statements that the elimination of her position was due solely to the financial difficulties facing the Defendant;" (4) the document titled Criteria for Reduction in Force was included with the packet containing the release of claims as information to consider when

signing the release of claims, and she was pressured to sign when the HR Director drove to Plaintiff's house to obtain the waiver on March 21, 2013; and (5) the allegedly fraudulent reasons for her dismissal caused her to give up legal claims, including those under the ADEA and CADA, she may have otherwise had.  *Compl.* [#1] ¶¶ 14-28.

Defendant asserts that *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963 (7th Cir. 2013), is on point and mandates that Plaintiff's assertion of fraud under these circumstances must be rejected.  *Reply* [#11] at 7-8.  Although the Court agrees that *Yassan* is on point,[5] the Court notes that this decision issued by the Seventh Circuit Court of Appeals is persuasive, not binding, authority.  *See In re Korean Air Lines Disaster*, 829 F.2d 1171 (D.C. Cir.1987), *aff'd*, 490 U.S. 122 (1989).  At this early stage of the case, the Court finds the Tenth Circuit Court of Appeals' discussion in *Bennett v. Coors Brewing Co.*, 189 F.3d at 1229-30, to be more instructive:

---

[5]  In *Yassan*:

Chase gave Yassan a severance package solely in return for his agreement to waive all claims against Chase, including "claims he kn[e]w about *and claims [he did] not know about.*"  There was no other reason for Chase to pay Yassan six months' salary after his termination.  Yassan knew this when he signed the release.  Chase may have misrepresented its reasons for terminating Yassan, and Chase may have had ulterior motives for terminating Yassan.  But Yassan explicitly released Chase from all tort claims, including fraud.  Yassan should have considered the possibility that Chase was lying to him before he signed a release waiving any claims that arose out of Chase lying to him. . . .

Chase gave Yassan forty-five days to consider the release, encouraged Yassan to consult with an attorney, and made it clear that Yassan's severance package hinged on his signing the release.  No matter what prior representations Chase had made about its reasons for terminating Yassan, Chase was forthcoming with Yassan about the terms of the release-severance package deal.  Yassan had ample opportunity to review and digest the terms of the deal before he agreed to it. . . .

. . . As a result, we have no trouble concluding that Yassan's age discrimination, wrongful discharge, and fraud claims all fail because Yassan explicitly waived his right to make these claims when he agreed to sign a sweeping release in exchange for a severance package.

708 F.3d at 974-75 (emphasis in original).

Under general contract principles, it is well established that a contract is void and unenforceable if procured through fraud. . . .  Appellants claim that when Coors stated that it intended to downsize the security department by 9.36 personnel, the statement was false and Coors' true intention was to keep the same number of employees. . . .  Thus, appellants argue, [this and other] allegedly fraudulent statements were made either to induce them to take the severance packages or, for those employees who had already signed a release, to insure that those appellants would not revoke their acceptance during the seven-day revocation period required by the [Older Worker Benefits Protection Act].

When taken in the light most favorable to the non-moving party, the fact that Coors began to advertise for new employees five days after appellants' official termination date and the allegation that Coors re-hired the security department to approximately the same number as before the downsizing is sufficient on this record to support appellants' allegations and establish a prima facie claim of fraud.  While appellants' allegations concern future events, appellants argue that, at the time Coors made these statements, Coors knew they were false and had no intention of downsizing . . . .  The issue of fraud as it relates to the knowing and voluntary nature of the waiver (including the disputed number of employees terminated and re-hired by Coors) was not developed in this summary judgment record and, on the factual record to this point, we cannot decide the issue of fraud as a matter of law.

Here, similarly, Defendant told Plaintiff that she and others were being released due to downsizing, but almost immediately, Defendant placed an advertisement to hire new persons into at least some of those positions, including Plaintiffs. *Compl.* [#1] ¶¶ 14, 28.

Defendant attempts to distinguish *Bennett*. *Reply* [#11] at 8-9, 10 n.9.  Citing to Colorado law, *Bennett* states that "[a]s a general rule, actionable fraud cannot consist of unfulfilled predictions or erroneous conjectures as to future events." 189 F.3d at 1230.  The Court disagrees that the allegedly fraudulent statement here, i.e., that the staff reduction was based solely on the financial difficulties of the company, consists of an "unfulfilled prediction[ ] or erroneous conjecture[ ]." *See id.*  Rather, the alleged statement is clearly about a present circumstance of the company which was provided as the reason for Plaintiff's termination.  Given the allegation that Plaintiff's position (as well as the positions

of others) was advertised in a newspaper the day after her last official day of work, the Court finds *Bennett* to be virtually indistinguishable on this point.  *See id.* ("[T]he fact that Coors began to advertise for new employees five days after appellants' official termination date and the allegation that Coors re-hired the security department to approximately the same number as before the downsizing is sufficient on this record to support appellants' allegations . . . of fraud.").

Although the allegations provided by Plaintiff are not extensive, the Court finds that Plaintiff has sufficiently satisfied Rule 9(b).  *See Schwartz*, 124 F.3d at 1252 ("The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, direct, . . . and to be construed as to do substantial justice.'" (quoting Fed. R. Civ. P. 8(e)); *Williams Field Servs. Grp. LLC v. Gen. Elec.*, No. 06-CV-0530-CVE-SAJ, 2008 WL 2809902 (N.D. Okla. July 21, 2008) ("Rule 9(b)'s particularity requirement, however, is not absolute or limitless; a plaintiff need not go so far as to give the defendant a 'pretrial memorandum containing all the evidentiary support for plaintiff's case.'" (quoting *Schrag v. Dinges*, 788 F. Supp. 1543, 1550 (D. Kan. 1992))).

Accordingly, the Motion [#6] is **denied** to the extent Defendant seeks dismissal of Plaintiff's ADEA and CADA claims on this basis.[6]

## B.    Intentional Interference with Prospective Business Relations

Plaintiff also asserts a state law claim for intentional interference with prospective business relations.  *Compl.* [#1] ¶¶ 37, 48-51.  In order to state this claim, Plaintiff must allege that Defendant's "improper and intentional interference prevented the formation of

---

[6]  Having found that dismissal is not warranted on this basis, the Court need not address Plaintiff's other arguments regarding duress and totality of the circumstances.

a contract between Plaintiff and a third party." *Jones v. Lehmkuhl*, No. 11-cv-02384-WYD-CBS, 2013 WL 6728951, at *23 (D. Colo. Dec. 20, 2013) (citing *MDM Grp. Assocs., Inc. v. CX Reinsurance Co., Ltd.*, 165 P.3d 882, 886 (Colo. App. 2007) (noting that "[i]nterference with 'another's prospective contractual relation' is tortious only if there is a reasonable likelihood or reasonable probability that a contract would have resulted")).

Plaintiff provides only vague, conclusory statements with respect to this claim and no factual allegations which permit the Defendant and the Court to determine how Defendant may have improperly and intentionally interfered with Plaintiff's prospective business relations.  The entirety of Plaintiff's allegations on this claim appear to consist of the following statement: "[F]ollowing Plaintiff's dismissal from the company and filing of charges with the EEOC, Defendant BCI engaged in a calculated effort to undermine Plaintiff's future employment practices by providing false, incomplete, and/or misleading information to potential employers, and/or failing to respond timely to potential employers who called to verify Plaintiff's former employment." *Compl.* [#1] ¶ 37; *see also id.* ¶¶ 48-51. No specific actions are attributed to Defendant and no third parties are named.  This is simply insufficient to put Defendant on notice of the grounds for this claim.  *See Shero*, 510 F.3d at 1200.  On the basis of these allegations, the Court cannot find that Plaintiff has stated a claim for intentional interference with prospective business relations.  *See, e.g.*, *Jones*, 2013 WL 6728951, at *23 ("Even when liberally construed, [this claim] is devoid of factual content.  Apart from 'reiterating each and every allegation' contained in preceding paragraphs, [the plaintiff] merely asserts that 'Defendants intentionally interfered with the business relations and prospective advantage of the Plaintiff through their actions.'").

Accordingly, the Motion [#6] is **granted** to the extent Defendant seeks dismissal of Plaintiff's claim of intentional interference with prospective business relations, and this claim

is **dismissed without prejudice**.  *See, e.g.*, *Preece v. Cooke*, No. 13-cv-03265-REB-KLM,
2014 WL 6440406, at *1 (D. Colo. Nov. 17, 2014) (stating that "[a] dismissal under Rule
12(b)(6) is a determination on the merits . . .  and presumptively is entered with prejudice,"
but that a case presenting "a scenario in which . . . [the plaintiff] might be able to replead
to state a viable claim if the facts were made clearer or expanded in some way" may be a
candidate for dismissal without prejudice).

## IV.  Conclusion

For the foregoing reasons, the Motion [#6] is **GRANTED in part and DENIED in
part**.  The Motion is **granted** to the extent that Plaintiff's claim of intentional interference
with prospective business relations is **DISMISSED without prejudice**.  The Motion is
**DENIED** to the extent it seeks dismissal of Plaintiff's claims under the ADEA and CADA.

Dated October 23, 2015, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

-12-